# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ERNEST WILLIAMS ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-2440 CAS |
| ) | |
| DON ROPER, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Ernest Cornelius Williams (registration no. 43551), an inmate at Potosi Correctional Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $2.62. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### *28 U.S.C. § 1915(b)(1)*

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $13.08, and an average monthly balance of $0. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $2.62, which is 20 percent of plaintiff's average monthly deposit.

## *28 U.S.C. § 1915(e)*

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989); Denton v. Hernandez, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of

a cause of action [that are] supported by mere conclusory statements." Id. at 1949.  Second, the Court must determine whether the complaint states a plausible claim for relief.  Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  The plaintiff is required to plead facts that show more than the "mere possibility of misconduct."  Id.  The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.  When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred.  Id. at 1950, 51-52.

## *The Complaint*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged retaliation by prison officials at Potosi Correctional Center ("PCC").  Named as defendants are:  Don Roper (Warden); Ian Wallace (Asst. Warden); Kay Kline (Functional Unit Manager); Brian Allen (Acting Functional Unit Manager); Eric Dunn (Caseworker); Christy Hoffman[1] (Correctional Officer); Jeremy Huffman[2] (Correctional Officer); Willie Forbes (Correctional Officer); Jason Horn (Correctional Officer); Daniel Blair (Correctional Officer); Kevin Culton (Correctional Officer); Shannon Clubbs (Correctional Officer); Clifton Copeland (Correctional Officer); Charles Conrad (Correctional Officer); Philip Comer (Correctional Officer); and Rick Bailey (Correctional Officer).  Plaintiff names defendants in their individual and official capacities, and he seeks both monetary and injunctive relief.

---

[1] Although Christy Hoffman's name is spelled "Huffman" in the caption of the complaint, she is referred to as "Hoffman" in the factual allegations of plaintiff's complaint.

[2] Plaintiff spells defendant Jeremy Huffman's name "Huffman" or "Hoffman" in various places in his complaint.  For ease of reference the Court will refer to this defendant as "Huffman."

3

### A. First Amendment Retaliation Allegations

During June and early July 2009, plaintiff asserts that defendant Blair came to plaintiff's housing unit and directed several of defendant Blair's subordinates to "strip search plaintiff, take urine samples from plaintiff, search plaintiff's cell, read and scatter plaintiff's legal papers in plaintiff's cell, harass and belittle plaintiff." Plaintiff claims that defendant Blair ordered these actions because "plaintiff had filed grievances/lawsuit against defendant Blair and/or other PCC staff." He asserts that "before and after the foregoing months Blair repeated[ly] told plaintiff that he would get [him] for filing grievances against PCC prison staff."

Plaintiff alleges that defendant Horn removed him from general population on July 9, 2009, and placed in him administrative segregation under the pretext of "extortion charges." Plaintiff claims that defendant Horn told him that the real reason he was being placed in administrative segregation was because of filing grievances/lawsuits against PCC staff and "being put in the hole is just the beginning of the punishment they [had] in store for plaintiff."

On July 10, 2009, plaintiff alleges that defendants Copeland and Forbes denied him a noon meal to "punish plaintiff" and "issued him a false misconduct violation[3] to bring disciplinary actions against him because he had filed grievances/lawsuit against other PCC officials." Plaintiff claims that defendants Clubbs, Culton, Conrad and Comer (referred to by plaintiff as the "C-Gang") "almost routinely denied plaintiff noon meal, put plaintiff on meal-loft [sic] to punish him, issued him false conduct violations alleging plaintiff violated a number of prison rules during his confinement in the hole, and initiated disciplinary action against plaintiff because plaintiff filed grievances/lawsuit regarding the conditions of his confinement at PCC."

---

[3] Plaintiff's claims that defendants gave him false conduct violations are not actionable under 42 U.S.C. § 1983 in and of themselves. See Glick v. Sargent, 696 F.2d 413, 414 (8th Cir. 1983) (per curiam).

4

Plaintiff asserts in a conclusory manner that defendants Hoffman and Forbes "supervised" the "C-Gang" and condoned the behavior of the defendants in "C-Gang."

Plaintiff further asserts defendants Allen and Blair acted as administrative segregation committee members and conducted plaintiff's 30-day review hearing. Plaintiff claims that he was not given proper notice of the hearing, and he asserts, generally, that the hearing was conducted in violation of several Missouri Department of Corrections' ("MDOC") rules and regulations.[4] Plaintiff claims he was told at the hearing that his confinement would be continued because defendant Horn was investigating him for "strong-arming," rather than just "extortion." Plaintiff asserts in an entirely conclusory fashion that defendants Blair, Allen and Horn worked "in concert"[5] to retaliate against him to continue his confinement in administrative segregation. He asserts, without any accompanying factual information whatsoever, that defendants Roper and Wallace "approved these acts" when they "reviewed plaintiff's confinement in the hole reports submitted to them by their subordinates." Plaintiff has failed to provide any documentation relating to the alleged review hearing or the purported "approval" by defendants Roper and Wallace.

---

[4] A federal court's inquiry is not whether a prison regulation was violated but whether the Constitution was violated. Griffin-Bey v. Bowersox, 978 F.2d 455, 457 (8th Cir. 1992) (per curiam).

[5] To the extent plaintiff is attempting to allege a conspiracy claim, perhaps pursuant to 42 U.S.C. § 1985, he has failed to do so because his allegations are general and conclusory. In order to show a civil rights conspiracy under 42 U.S.C. § 1985(3), the plaintiff must allege: (1) the defendants conspired, (2) with the intent to deprive plaintiff, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that the plaintiff or his property was injured, or he was deprived of exercising any right or privilege of a citizen of the United States. See Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996). A claim under § 1985(3) requires proof of invidious discriminatory intent and a violation of a serious constitutional right that is protected from official and private encroachment. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). The list of rights to which § 1985 applies is reserved to claims involving racial or class-based invidiously discriminatory animus. Id.

Plaintiff claims that in August 2009, defendant Huffman issued plaintiff a false conduct violation, alleging he damaged a MDOC's bed sheet, as retaliation for having filed grievances/lawsuit. Plaintiff asserts that on September 22, 2009, defendant Conrad "took plaintiff's bed pillow and ripped it into pieces in front of plaintiff" and "repeatedly told plaintiff he hated him and wished he was dead because plaintiff filed a lawsuit against Judith Silvey, C.O. I. (who at the time was employed at PCC and defendant Conrad's fiancée and roommate)."

Plaintiff alleges that on September 26, 2009, defendants Conrad, Clubbs and Comer came to plaintiff's cell and under the pretext of searching the cell, destroyed his mattress, planted sandwich bags in the cell, threw legal papers and his property around, threw away his personal items, issued plaintiff a false conduct violation, placed plaintiff on a meal-loaf diet, forced plaintiff to sleep on a concrete slab without a mattress or pillow and confined plaintiff to a cell without heat or proper clothing, which they did despite plaintiff's known medical condition of "severe back pains and authritis [sic]." Plaintiff claims that defendants acted in this manner "because plaintiff had filed grievances/lawsuit on them, and/or other PCC staff."

Plaintiff asserts that on September 6, 2011, "defendant Blair directed two (2) of his subordinates to issue plaintiff a false misconduct violation to retaliate against plaintiff because plaintiff filed grievances and a lawsuit on PCC staff."

Plaintiff asserts that supervisory defendants Roper, Wallace, Kline, Hoffman, Allen, Bailey, Dunn, Blair and Horn retaliated against him by "allowing, ignoring, participating in, and/or aiding the other defendants' denial of meals, fresh air, haircuts, recreation, matress[es], pillows, heat, proper clothing, and sanitary living quarters to plaintiff during 7/10/09 to 2/25/10 despite them having knowledge of plaintiff's medical condition." He claims that "because plaintiff filed grievances/lawsuit on PCC staff these defendants did nothing to stop or prevent the unlawful conditions of plaintiff's confinement." Plaintiff did not provide the Court with any

grievances he allegedly filed with respect to his alleged unsanitary living conditions. Plaintiff has also failed to provide any specific information relating to the purported acts of the alleged supervisory defendants, such as when these supervisory defendants were allegedly told of his purported conditions of confinement.

Plaintiff alleges, generally, that he "filed prison grievances/complaints to defendant Roper putting him on notice of the other defendants' unconstitutional actions." Plaintiff claims that "although defendant Roper was informed that there was an ongoing violation of plaintiff's constitutional rights, he took no action and allowed these violations to continue." Plaintiff further alleges that "defendant Roper subsequently forwarded plaintiff's grievances/complaints to defendants Wallace and Kline (Maloy)." Plaintiff claims that defendants Wallace and Kline were similarly deliberately indifferent to the "ongoing retaliation/deprivations." Plaintiff has failed to provide the Court with any information about his alleged attempts to contact defendants Roper, Wallace or Kline, and he has failed to provide the Court with copies of any alleged correspondence with defendants regarding his grievances/complaints.

### B. Fourth Amendment Allegations

In addition to the First Amendment retaliation claims, plaintiff also brings Fourth Amendment claims against defendants Hoffman, Culton, Roper, Wallace and Kline. Plaintiff complains about the actions of defendant Culton and defendant Hoffman in singling him out from a group of prisoners returning from "medical." He claims that defendant Culton placed plaintiff into "an open-view locked shower and ordered plaintiff to take off his clothing [in the presence and plain sight of defendant Christy Hoffman (Pashia) who is a female guard]." Plaintiff asserts that he was made to "spread his legs apart, lift his testicles, turn around squat and cough." Plaintiff claims that defendant Hoffman watched the search as she held a can of mace directly at plaintiff.

Plaintiff claims that this instance, and other unnamed strip searches which occurred during his time in administrative segregation in front of Hoffman and Culton, were done in violation of his rights under the Fourth Amendment. Plaintiff also complaints that defendant Culton engaged in an unlawful strip search on plaintiff in his cell.

Plaintiff asserts that he "complained to defendant Roper about the foregoing actions of Culton and Mrs. Hoffman and Roper forwarded the complaints to defendants Kline (Maloy) and Wallace." Plaintiff does not include in his complaint how he "complained" to defendants, nor does he attach to his complaint the alleged correspondence.

Plaintiff asserts that although he requested official charges be brought against Culton and Hoffman, nothing occurred. Plaintiff additionally claims, without any accompanying factual information whatsoever, that two correctional officers who have not been named as defendants in this action – C.O.s Arnold and Giles (a woman), were later allowed to strip search plaintiff, with approval by Roper, Kline and Wallace. Again, plaintiff's allegations as to Roper, Kline and Wallace are entirely conclusory and lack any accompanying factual information whatsoever.

**C. Eighth Amendment Allegations**

Plaintiff brings Eighth Amendment claims relating to his conditions of confinement during his incarceration in administration segregation, from July 9, 2009 to February 25, 2010, against defendants Roper, Wallace, Kline, Forbes, Hoffman, Bailey, Dunn and the "C-Gang."

Plaintiff asserts that the aforementioned defendants were all aware that he was held in administrative segregation during the time period mentioned above, 24-hours per day, and that his cell lacked a mattress, a pillow and sometimes heat. He claims that the only clothing he possessed was a "raggedly tee-shirt, boxer shorts, socks and shower shoes." He asserts that "the toilet stool in plaintiff's cell was stopped up and it backed up frequently flooding the entire cell floor with urine and feces." Plaintiff does not state how his conditions compared with those in

8

general population. Additionally, other than his conclusory facts, plaintiff does not provide specific facts about his time in administrative segregation, such as how often he was denied recreation, how long he was kept in a cell without a mattress, and how long he was in a cell without heat.

Plaintiff claims, again in an entirely conclusory fashion, that he grieved his conditions of confinement to all of the aforesaid defendants during the time he was held in administrative segregation, but that defendants refused or failed to change his conditions. He asserts that as a direct result of the conditions in administrative segregation, he suffered headaches, back pains, skin rashes and severe itching. Plaintiff has not specifically identified a medical condition that allegedly arose as a result of his time in administrative segregation, nor has he provided the Court with any documentation of a medical problem.

*Discussion*

**A. First Amendment Retaliation Claims**

It is well-settled that a prisoner has a First Amendment right to petition the government to redress his grievances, and prison officials are precluded from penalizing a prisoner for exercising those rights. Nelson v. Shuffman, 603 F.3d 439, 449-50 (8th Cir. 2010) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989)). Moreover, an action by a prison official "in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (quotation and citations omitted). Plaintiff has alleged enough facts in his complaint to state a claim for relief for First Amendment retaliation against defendants Blair, Horn, Conrad, Clubbs, Comer, Copeland, Forbes, Culton and Huffman. The Court will order the Clerk to issue process on these defendants, in their individual capacities,

with respect to these claims. However, plaintiff's claims against these defendants in their official capacities will be dismissed, without prejudice.[6]

Plaintiff's allegations of First Amendment retaliation against the supervisory defendants – Hoffman, Bailey, Dunn, Roper, Wallace, Allen and Kline – fail to state a claim upon which relief may be granted. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. See Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under §1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff's complaint is replete with conclusory allegations and generalized factual assertions against the aforementioned supervisory defendants. In many of the paragraphs of his complaint he has completely failed to set forth any facts indicating that the named supervisory defendants were directly involved in or personally responsible for the alleged First Amendment retaliation violations. Rather, like the complaint in Iqbal, plaintiff's asseverations against the supervisory defendants are conclusory and not entitled to an assumption of truth. Iqbal, 129 S.Ct. at 1951. As a result, the complaint fails to state a claim upon which relief can be granted. See, e.g., Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); Woods v. Goord, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials

---

[6]Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id.

personally liable under § 1983). As such, plaintiff's claims for First Amendment retaliation against the supervisory defendants Hoffman, Bailey, Dunn, Roper, Wallace, Allen and Kline will be dismissed, without prejudice.

   B.  **Fourth Amendment Claims**

After reviewing the complaint in its entirety, the Court finds that plaintiff's allegations of defendants' Culton and Hoffman's unlawful strip searches in violation of the Fourth Amendment state a claim upon which relief may be granted.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Generally, strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns. See, e.g., Franklin v. Lockhart, 883 F.2d 654, 656-57 (8th Cir. 1989). Strip searches conducted "in an abusive fashion . . . cannot be condoned." Bell, 441 U.S. at 560.

Plaintiff's facts, as stated against defendants Hoffman and Culton, are enough to justify issuing process against defendants in their individual capacities. Plaintiff's claims against them in their official capacities, however, will be dismissed for failure to state a claim. See Will, 491 U.S. at 71 ("[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983.")

Again, however, plaintiff has not provided enough facts to state a claim against the supervisory defendants for a Fourth Amendment violation. Although plaintiff states generally that he complained to defendant Roper, he fails to provide details of his alleged complaints, and

he has not provided any additional information about how or why he believes these complaints were "forwarded" on to defendants Kline and Wallace, such that these defendants should be held liable for a violation of the Fourth Amendment. Plaintiff's general and conclusory allegations are simply unsupported and cannot form the basis for supervisory liability in this instance. Accordingly, the Court will dismiss, without prejudice, his Fourth Amendment claims against defendants Roper, Kline and Wallace.

C. **Eighth Amendment Claims**

Plaintiff's allegations of the alleged Eighth Amendment violations that he was subjected to in regard to his conditions of confinement during his time in administrative segregation, from July 2009 through February 2010, are not pleaded with enough specificity to state a claim.[7]

To state a claim for unconstitutional conditions of confinement, an inmate must show that the alleged deprivations denied him the minimal civilized measure of life's necessities and that defendants were deliberately indifferent to an excessive risk to his health or safety. See Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) ("Eighth Amendment does not absolutely bar placing an inmate in a cell without clothes or bedding."); Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (exposure to raw sewage may amount to cruel and unusual punishment, but being subject to overflowed toilet in his cell for four days does not).

---

[7] To the extent plaintiff is attempting to assert that he has been denied due process with respect to the procedures that placed him in administrative segregation (and kept him there), the Court finds that plaintiff has failed to state a claim upon which relief may be granted. In order to determine whether plaintiff "possesses a liberty interest [in the due process clause], [the Court must] compare the conditions to which [plaintiff] was exposed in segregation with those he . . . could expect to experience as an ordinary incident of prison life. Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (quoting Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997)). In this context, the Court do[es] not consider the procedures used to confine the inmate in segregation. Id. (citing Kennedy v. Bankenship, 100 F.3d 640, 643 (8th Cir. 1996)). For plaintiff to assert a liberty interest, he must show some difference between [the] conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship. Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff makes no such assertions in the complaint. Thus, he has failed to allege a violation of his due process rights.

Plaintiff's allegations of holes in his clothes and bedding simply do not state an excessive risk to his health or safety.  See, e.g., Barnes v. Holder, 2014 WL 1478440, *3 (E.D.Mo. April 15, 2014).  And plaintiff has not been specific enough about the length of time he was allegedly subjected to an overflowed toilet or other "denials of life's necessities," such as when or how often he lacked a mattress or pillow or heat in his cell.  Moreover, plaintiff has not discussed in his complaint a specific health problem that allegedly arose from such "denials," other than to generally state that he suffered "headaches, increased back pains, and insomnia, emotional distress, mental anguish and humiliation" at some point during the approximately eight months he was held in administrative segregation.  Such generalized allegations simply cannot suffice to state a claim for an Eighth Amendment violation for cruel and unusual punishment.  As such, plaintiff's claims for Eighth Amendment violations against defendants Roper, Wallace, Kline, Forbes, Hoffman, Bailey, Dunn, Clubbs, Culton, Conrad and Comer are subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**.  [Doc. 2]

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $2.62 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee of $2.62 within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to plaintiff's First Amendment retaliation claims brought against defendants Daniel Blair, Jason L. Horn, Charles T. Conrad, Shannon R. Clubbs, Phillip G. Comer, Clifton J. Copeland, Willie Forbes, Kevin Culton and Jeremy J. Huffman (also referred to as "Hoffman") in their individual capacities. Defendants shall be served through the Court's waiver agreement with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to plaintiff's Fourth Amendment claims brought against defendants Kevin Culton and Christy Hoffman (also referred to as "Huffman") in their individual capacities. Defendants shall be served through the Court's waiver agreement with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Daniel Blair, Jason L. Horn, Charles T. Conrad, Shannon R. Clubbs, Phillip G. Comer, Clifton J. Copeland, Willie Forbes, Kevin Culton and Jeremy J. Huffman (also referred to as "Hoffman") shall reply to plaintiff's claims First Amendment retaliation claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure. Additionally, defendants Kevin Culton and Christy Hoffman (also referred to as "Huffman") shall reply to plaintiff's Fourth Amendment claims within the time provided within Rule 12(a).

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Rick Bailey, Eric Dunn, Don Roper, Ian Wallace, Brian Allen and Kay Kline because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's claims against defendants in their official capacities,

plaintiff's claims against defendants brought pursuant to the Eighth Amendment, plaintiff's claims for conspiracy, and/or plaintiff's claims for violations of his due process rights because, as to these claims, the complaint is legally frivolous or fail to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  1st  day of July, 2014.