# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST CORNELIUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-2440 CAS |
| | ) | |
| DON ROPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Christy Huffman,[1] Jeremy J. Huffman, Willie Forbes, Jason L. Horn, Daniel Blair, Kevin Culton, Shannon R. Clubbs, Clifton Copeland, Charles T. Conrad, and Phillip G. Comer's motion for summary judgment. Defendants argue that they are entitled to summary judgment because plaintiff's claims are barred by the doctrine of res judicata. In addition, defendant Pashia moves for the dismissal of the claims against her on the grounds that plaintiff cannot establish a Fourth Amendment violation, and that she is entitled to qualified immunity. Plaintiff, who is proceeding pro se, opposes defendants' motion for summary judgment, which is fully briefed and ripe for review. For the following reasons, the Court will deny defendants' motion for summary judgment.[2]

---

[1]Plaintiff named defendant "Christy Huffman (Pashia)" in his complaint. This defendant responded as "Christy Huffman, n/k/a Christy Pashia," and she has referred to herself as Christy Pashia in all of her filings. For purposes of clarity, the Court shall refer to this defendant as Christy Pashia ("Pashia").

[2]Also before the Court is plaintiff's motion to compel. In an order dated June 7, 2016, the Court denied plaintiff's motion to defer ruling on defendants' motion for summary judgment. Plaintiff failed to identify any specific discovery he needed in order to respond to defendants' motion for summary judgment. Plaintiff merely stated that there "might" be outstanding discovery to refute defendants' motion. He did not show that he could not present facts "essential" to his opposition. Fed. R. Civ. P. 56(d). In light of the fact that the Court is denying defendants' motion

## I. Background

Plaintiff Ernest Cornelius Williams is an offender in the custody of the Missouri Department of Corrections ("MDOC"). At all times relevant to the complaint, plaintiff was an inmate at Potosi Correctional Center ("PCC"). In his Complaint, which was verified and signed under penalty of perjury, plaintiff alleges a number of claims under 42 U.S.C. § 1983 against Don Roper (Warden); Ian Wallace (Asst. Warden); Kay Kline (Functional Unit Manager); Brian Allen (Acting Functional Unit Manager); Eric Dunn (Caseworker); Christy Pashia (Correctional Officer); Jeremy Huffman[3] (Correctional Officer); Willie Forbes (Correctional Officer); Jason Horn (Correctional Officer); Daniel Blair (Correctional Officer); Kevin Culton (Correctional Officer); Shannon Clubbs (Correctional Officer); Clifton Copeland (Correctional Officer); Charles Conrad (Correctional Officer); Philip Comer (Correctional Officer); and Rick Bailey (Correctional Officer). Plaintiff names defendants in their individual and official capacities, and he seeks both monetary and injunctive relief.

In his Complaint, plaintiff alleges First Amendment retaliation claims. He claims that he was stripped searched, harassed, and belittled because plaintiff had filed grievances or lawsuits against staff at PCC. Plaintiff also alleges that he was placed in administrative segregation because he had filed grievances and lawsuits against staff at PCC. While in administrative segregation, plaintiff alleges that he was routinely denied a noon meal, and he was issued false conduct violations as punishment for filing lawsuits and grievances.

---

for summary judgment and appointing trial counsel, the Court will deny, without prejudice, plaintiff's motion to compel. Appointed counsel may refile the motion, if necessary, after reviewing the record.

[3]Plaintiff spells defendant Jeremy Huffman's name "Huffman" or "Hoffman" in various places in his Complaint. For ease of reference, the Court will refer to this defendant as "Huffman."

Plaintiff further alleges that on September 26, 2009, defendants Conrad, Clubbs, and Comer came to plaintiff's cell and under the pretext of searching the cell, destroyed his mattress, planted sandwich bags in the cell, threw legal papers and his property around, threw away his personal items, issued plaintiff a false conduct violation, placed plaintiff on a meal-loaf diet, forced plaintiff to sleep on a concrete slab without a mattress or pillow, and confined plaintiff to a cell without heat or proper clothing, which they did despite plaintiff's known medical conditions. Plaintiff claims that defendants acted in this manner because he has filed grievances and lawsuits against PCC staff.

In addition to the First Amendment retaliation claims, plaintiff also brings Fourth Amendment claims against defendants Pashia, Culton, Roper, Wallace, and Kline. Plaintiff complains that he was singled out and strip searched in an open-view shower. He also alleges that defendant Pashia, a female officer, assisted in conducting the strip search and observed him while he was nude. Plaintiff claims that this instance, and other unspecified strip searches were done in violation of his rights under the Fourth Amendment. Plaintiff also complaints that defendant Culton engaged in an unlawful strip search of plaintiff in his cell.

In a Memorandum and Order dated July 1, 2014, the Court conducted a § 1915(e)(2)(B) review and concluded that plaintiff had alleged enough facts in his complaint to state a claim for relief for First Amendment retaliation against defendants Blair, Horn, Conrad, Clubbs, Comer, Copeland, Forbes, Culton, and Huffman in their individual capacities. The First Amendment retaliation claims against these defendants in their official capacities were dismissed. As for plaintiff's allegations of First Amendment retaliation against the supervisory defendants – defendants Pashia, Bailey, Dunn, Roper, Wallace, Allen, and Kline – the Court found plaintiff had failed to state a claim upon which relief may be granted, and these claims were dismissed without prejudice. The Court further found that plaintiff had stated claims against defendants Culton and

Pashia in their individual capacities for violations of the Fourth Amendment based on his allegations regarding strip searches. The Fourth Amendment claims against these defendants in their official capacities, however, were dismissed. The Court also dismissed without prejudice plaintiff's Fourth Amendment claims against defendants Roper, Kline and Wallace, which were based on a theory of supervisory liability. Finally, the Court found plaintiff had failed to state a claim under the Eighth Amendment against any of the defendants, or that he had stated a claim of conspiracy or for violation of his due process rights.

After conducting discovery, defendants Pashia, Huffman, Forbes, Horn, Blair, Culton, Clubbs, Copeland, Conrad, and Comer now move for summary judgment on three grounds. First, defendants argue plaintiff's suit is barred by the doctrine of res judicata because he filed claims against these defendants in Missouri state court. Second, defendants argue plaintiff's suit is barred by the doctrine of res judicata because the claims were adjudicated in a case that was previously pending in this District. And finally, defendant Pashia argues that plaintiff has failed to establish that she violated plaintiff's Fourth Amendment rights, or in the alternative, she argues she is entitled to qualified immunity.

## II.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the

initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 257; <u>Heisler v. Metropolitan Council</u>, 339 F.3d 622, 626 (8th Cir. 2003).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### *III.  Facts*

In support of their motion for summary judgment, defendants submitted a statement of uncontroverted material facts.  Plaintiff did not respond to defendants' statement of uncontroverted facts or provide the Court with a statement of material facts as to which he contends a genuine dispute exists. Accordingly, plaintiff has not met the requirements of Local Rule 4.01(E), and he is deemed to have admitted the facts in defendants' statement of uncontroverted facts.[4]  <u>Deichmann</u>

---

[4]Local Rule 4.01(E) provides, with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of

v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D.Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000), cert.

denied, 531 U.S. 877. Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725

(8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that

excluded some of the material facts offered in opposition to a motion for summary judgment).

Plaintiff, who is proceeding pro se, did file submit a number of exhibits in opposition to summary

judgment. In addition, his memorandum in opposition to summary judgment and his Complaint are

both verified and signed under penalty of perjury. The Court further notes that it may take judicial

notice of the docket entries and filings from state court and this District.[5] Stutzka v. McCarville, 420

F.3d 757, 760 n.2 (8th Cir. 2005) ("we may take judicial notice of judicial opinions and public

records[.]"). After reviewing the record, and with the summary judgment standard in mind, the

Court accepts the following facts as true for purposes of resolving defendants' motion for summary

judgment:

Plaintiff is currently incarcerated at MDOC, Southeast Correctional Center. He was

incarcerated at PCC in Potosi, Missouri from 2000 to April of 2015. Prior to the filing of the present

lawsuit, plaintiff filed a writ of habeas corpus petition in the Circuit Court of Washington County

on October 28, 2009, entitled Ernest C. Williams v. Don Roper, et al., Case No. 09WA-CC00532

(the "State Court Action"). At the same time, he filed with that court an "Application and Affidavit

---

facts. All matters set forth in the statement of the movant shall be deemed admitted
for purposes of summary judgment unless specifically controverted by the opposing
party.

E.D. Mo. L.R. 4.01(E).

[5]Defendants attached to their motion for summary judgment a copy of plaintiff's amended
petition, defendant Roper's motion to dismiss, the state court's order granting defendant Roper's
motion to dismiss, and the Eastern District Court of Appeal's order dismissing plaintiff's appeal.

to Proceed in Forma Pauperis." The state court issued a show cause order and forwarded plaintiff's habeas petition to the Missouri Attorney General's Office. On January 28, 2010, the Missouri Attorney General's Office entered an appearance and filed a response on behalf of defendant Don Roper. On April 2, 2010, plaintiff moved to amend his habeas petition to file claims under 42 U.S.C. § 1983. The defendants named in the proposed amended petition included all of the remaining defendants in the present action.[6] Many of the allegations in the amended petition in State Court Action were the same as the allegations in the present cause of action.

The state court granted plaintiff leave to amend, and it ordered its clerk of court to send the amended petition to the named defendants. These defendants, however, were not served. On April 19, 2010, defendant Don Roper moved to dismiss plaintiff's amended petition for failure to state a claim. The other defendants did not join in the motion, file answers, or otherwise respond to plaintiff's amended petition. Defendant Roper's motion to dismiss was fully briefed, and on August 27, 2010, the state court granted the motion. It dismissed without prejudice plaintiff's writ of habeas corpus "for the reasons set forth in the respondent's motion to dismiss and suggestions thereto." Doc. 83, Ex. B at 27. Plaintiff appealed the dismissal to the Missouri Court of Appeals, Eastern District. The Eastern District dismissed the appeal without prejudice for failure to comply with Missouri Supreme Court Rule 74.01(a).

Prior to filing the State Action, plaintiff filed on February 5, 2009, a complaint in the United States District Court, Eastern District of Missouri, entitled <u>Williams, et al. v. Silvey, et al.</u>, Cause No. 4:09-CV-211 (the "Prior Federal Action"), which was amended on December 3, 2012. The

---

[6]Plaintiff named Don Roper, Ian Wallace, Kay Mallow, Joe Arcand, Brian Allen, Eric Dunn, Christy Huffman [Pashia], Willie Forbes, Jason L. Horn, Daniel Blair, Kevin Culton, Shannon Clubbs, Clifton J. Copeland, Charles T. Conrd, Jeremy J. Huffman and Phillip G. Comer as defendants in his amended petition.

Prior Federal Action was dismissed on summary judgment and affirmed on appeal. In the Prior Federal Action, plaintiff and his wife, who joined as a plaintiff, alleged that defendants Judith Silvey, Sarah Whitener, Donald Roper, and Cindy Griffith retaliated against them for exercising their First Amendment right to petition the government. More specifically, they alleged that defendant Silvey harassed and belittled plaintiff and his wife and used racial epithets during Mrs. Williams's visits in retaliation for the plaintiffs having filed grievances and complaints about the visitation room. Plaintiff and his wife also alleged that defendants Silvey and Whitener issued conduct violations against them falsely accusing them of violating a number of institutional rules during their visits. Plaintiff and his wife alleged these events took place between January 2008 and May 2008.

On October 22, 2013, as part of the discovery in the Prior Federal Action, plaintiff testified during his deposition that he spent time in administrative segregation from June 2009 through February 2010. Plaintiff testified that while he was in administrative segregation, he received a number of false conduct violations, which resulted in lengthening his stay in administrative segregation, and that he was denied a mattress, showers, proper clothing, and certain meals. Plaintiff testified that the violations issued against him and the poor conditions were caused by Judith Silvey because she had a personal relationship with one of the administrative segregation officers, and she directed this as retaliation. In that same deposition, plaintiff referenced Conrad, Clubbs, Comer, Culton, who he called "the C gang," and Forbes, all of whom are defendants in the present action. Claims regarding plaintiff's confinement in administrative segregation were not included in the complaint in the Prior Federal Action. In addition, defendants Conrad, Clubbs, Comer, Culton, and Forbes were not named as defendants in the Prior Federal Action.

**Facts Relevant to Defendant Pashia**

Plaintiff alleged in his Complaint, among other things, that he was subjected to strip searches in an enclosed shower with glass or mesh doors, which he believed were improper because other people, including female staff, could see this procedure. Plaintiff assumed that female officers looked inside the shower during strip searches, but he did not know who looked inside while he was being strip searched. Plaintiff has seen other offenders taken to the shower for strip searches.

Defendant Pashia was a utility sergeant at PCC from December 2008 through May 2013. On one occasion, defendant Pashia, a female officer, was present as the "second officer" during a strip search of plaintiff in the shower. In general, defendant Pashia attests that when she was the second officer at a strip search, she would stand aside so that she could only see the other officer and not the offender. Plaintiff stated under penalty of perjury that defendant Pashia closely watched his nude body during the strip search. <u>See</u> Doc. 1 at 16. It is undisputed that defendant Pashia pointed a can of mace (OC pepper spray) at plaintiff during the strip search, but she did not use it. Plaintiff also testified that defendant Pashia would patrol the housing unit, looking inside the showers. All corrections officers, both male and female, patrol the entire housing unit, including the showers for security purposes.

## IV. Discussion

### A. Res Judicata

In their motion for summary judgment, defendants argue that the claims in plaintiff's complaint are barred under principles of res judicata and, therefore, they are entitled to summary judgment in their favor as a matter of law. Defendants base their res judicata argument on two theories. First, they argue that plaintiff's claims are barred by the preclusive effect of the dismissal

of the State Court Action. Second, defendants argue that the Prior Federal Action precludes plaintiff from bringing the claims his current suit.

### 1. Effect of State Court Action

Defendants argue that the "Judgment Dismissing Writ of Habeas Corpus," issued by the Circuit Court of Washington County, precludes plaintiff from bringing claims against them in this Court because of the effect of res judicata. In order to evaluate this defense, the Court must examine Missouri law to determine whether plaintiff's suit would be barred under Missouri's application of the doctrine of res judicata. Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997) (noting that it is "'fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum'") (quoting Semler v. Psychiatric Inst. of Washington, D.C., Inc., 575 F.2d 922, 930 (D.C. Cir. 1978)); see also Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002) overruled on other grounds by Syngenta Crop Protection Inc. v. Henson, 537 U.S. 28, 123 (2002).

Under Missouri law, res judicata "'prohibits a party from bringing a previously litigated claim.'" Kesterson v. State Farm Fire & Cas. Co., 242 S.W.3d 712, 715 (Mo. 2008) (quoting Chesterfield Village, Inc. v. City of Chesterfield, 64 S.W.3d 315, 318 (Mo. banc 2002)). Missouri courts refer to this doctrine under its more modern term, "claim preclusion." Id. Claim preclusion operates as a bar preventing a plaintiff from bringing a claim against the same parties or those in privity with them that has been previously adjudicated. American Polled Hereford Ass'n v. City of Kansas City, 626 S.W.2d 237, 241 (Mo. 1982). But for the doctrine of claim preclusion to apply, a final judgment on the merits must have been rendered in the underlying action. Barkley v. Carter County State Bank, 791 S.W.2d 906, 910 (Mo. Ct. App.1990).

Here, plaintiff's State Court Action was dismissed without prejudice. Under Missouri law, dismissal without prejudice "usually is not an adjudication on the merits of the claim and does not affect the plaintiff's right to refile the action." Sexton v. Jenkins & Associates, Inc., 152 S.W.3d 270, 273 (Mo. 2004) (citing Mo. Sup. Ct. Rule 67.01; Mahoney v. Doerhoff Surgical Srvs., 807 S.W.2d 503, 506 (Mo. banc 1991)). That said, under certain circumstances a dismissal without prejudice "may be considered a judgment on the merits of issues" as to issues that were "actually litigated and decided." Id. (citing Healy v. Atchison, Topeka & Santa Fe Railroad, 287 S.W.2d 813, 815 (Mo. 1956). Therefore, "even when a court has dismissed a case without prejudice, an issue specifically and necessarily decided by that court is final and may not be relitigated in a second action brought in a court of concurrent jurisdiction." Bachman v. Bachman, 997 S.W.2d 23, 25 (Mo. Ct. App. 1999). Applying this law, the Court finds plaintiff is not barred by claim preclusion from bringing his claims against the defendants in his current suit because the State Court Action was dismissed without prejudice. He is, however, precluded from relitigating issues that were already decided in the State Court Action.

The state court ruled in its order dismissing the State Court Action that it was dismissing "for the reasons set forth in the Respondent's Motion to Dismiss and Suggestions thereto." Doc. 83, Ex. B at 27. Plaintiff had filed suit against Don Roper, Ian Wallace, Kay Malloy, Joe Arcand, Brian Allen, Eric Dunn, Christy Huffman, Willie Forbes, Jason L. Horn, Daniel Blair, Kevin Culton Shannon Clubbs, Clifton J. Copeland, Charles Conrad, Jeremy J. Huffman, and Phillip G. Comer, but only one defendant, Don Roper, entered an appearance in the case and filed a motion to dismiss. None of the other defendants were served. In his motion to dismiss, defendant Roper argued that plaintiff had failed to state a claim against him because plaintiff's allegations were conclusory, and plaintiff had not sufficiently alleged facts to establish liability as to him. Defendant Roper further

argued that plaintiff could not impose liability as to him on the basis of respondeat superior, and that plaintiff had failed to state a claim under 42 U.S.C. § 1983 based on allegations of violations of state law or agency rules or regulations. Because the state court stated in its order that it was dismissing the State Court Action on the grounds raised in defendant Roper's motion to dismiss, plaintiff is precluded from relitigating these issues in his current suit. These issues, however, are for the most part moot. Defendant Roper is no longer a party to this suit, as he was dismissed when the Court did its initial frivolity review. What is more, this Court dismissed from the current suit any supervisory defendants on the grounds that respondeat superior theory is inapplicable in § 1983 suits. See Doc. 6 at 10 (citing Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995)). Furthermore, the Court agrees that in cases brought under § 1983, the inquiry is not whether a prison regulation was violated but whether the Constitution was violated, Griffin-Bey v. Bowersox, 978 F.2d 455, 457 (8th Cir. 1992), although this issue is not squarely before this Court at this time.

Defendants argue in their memorandum that the state court decision finding that plaintiff failed to state a claim as to Don Roper is binding as to the other defendants under the doctrine of res judicata because the parties are in privity with each other. First, the remaining defendants, who are sued in their individual capacities, are not in privity with each other or Don Roper. Missouri courts have explained that "'[p]rivity,' as a basis for satisfying the 'identical party' requirement of res judicata, 'is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court.'" Commonwealth Land Title Ins. Co. v. Miceli, 480 S.W.3d 354, 365 (Mo. Ct. App. 2015) (quoting Lomax v. Sewell, 50 S.W.3d 804, 809 (Mo. Ct. App. 2001)). But "when two defendants are potentially liable for the same loss, the claims are considered separate and two suits can be maintained against the differing parties." Hollida v. Hollida, 190 S.W.3d 550, 556 (Mo. Ct. App.

12

2006).  See also Miceli, 480 S.W.3d at 366 (finding judgments entered against a company and a co-owner were not res judicata as to claims in a subsequent suit against a different owner in his individual capacity, even though they were based on the same transactions).  And although Missouri courts have not addressed the issue of privity with regard to state officials, Missouri courts have held that it is "well settled" that a judgment in a suit for or against an administrator in his personal capacity is not res judicata as to another suit wherein the administrator is a party in his official capacity.  Kirk v. Metro. Life Ins. Co., 38 S.W.2d 519, 521 (Mo. 1931).[7]  Because plaintiff's remaining claims are against the defendants in their individual capacity, the Court finds they are not in privity with defendant Roper and therefore res judicata does not apply.  But even if the doctrine were to apply, it would only apply as to issues that were previously decided by the state court, which as discussed above, are not applicable to the remaining defendants in cause of action or are irrelevant at this juncture.

        In sum, the Court finds the doctrine of res judicata based on the prior State Court Action does not apply.  The remaining defendants in this case were dismissed without prejudice in the State Court Action because they were never served.  Therefore, there was no decision on the merits as to these defendants.  And to the extent the state court made rulings on issues that were litigated in the State Court Action, these rulings are, for the most part, not applicable to the remaining defendants in this case, and to the extent they are, they do not entitle these defendants to summary judgment.

_____

        [7]What is more, the Eighth Circuit has held that prior litigation against one state official in his official capacity neither protects that official from being sued in his individual capacity, nor does it protect other officials from the same agency from being sued in their individual capacities.  Irving v. Dormire, 586 F.3d 645, 647 (8th Cir. 2009) (quoting Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987) ("litigation involving officials in their official capacity does not preclude relitigation in their personal capacity.")).

### 2.     Effect of Prior Federal Action

Defendants' second argument based on the doctrine of res judicata is that plaintiff's claims are barred because some of the factual issues that form the basis of the present suit were disclosed during discovery in the Prior Federal Action.  Because defendants are attempting to use a judgment from a prior federal suit to bar plaintiff's claims in this suit, federal law applies.  Canady, 282 F.3d at 1014 (the res judicata effect of the first forum's judgment is governed by the first forum's law).

Under Eighth Circuit law, a claim will be held to be precluded by a prior lawsuit when:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009) (citing Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998)); see also In re Anderberg–Lund Printing Co., 109 F.3d 1343, 1346 (8th Cir. 1997).  After examining record in this case and the Prior Federal Action, the Court finds defendants have not established that the third and fourth elements have been met.

First, the parties in this suit are not the same as the parties in the Prior Federal Action.  In the Prior Federal Action, plaintiff and his wife sued Judith Silvey, Sarah Whitener, Unknown Menteer, Eric Dunn, Cindy Griffith, Don Roper, and the MDOC.[8] None of the remaining defendants in the present suit were defendants in the Prior Federal action. And, as discussed above, the remaining defendants in the current suit are being sued in their individual capacities, therefore, there

---

[8]Plaintiffs also sued Kay Kline, Melody Haney, Fred Johnson, and Patricia Cornell, but these defendants were dismissed without prejudice on the Court's initial frivolity review.

is no privity between these defendants and the defendants in the Prior Federal Action. Irving, 586 F.3d at 647; Headley, 828 F.2d at 1279.

The fourth element has also not been established. "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989). "In the final analysis 'the test would seem to be whether the wrong for which redress is sought is the same in both actions.'" Daley v. Marriot Int'l, Inc., 415 F.3d 889, 896 (8th Cir. 2005) (quoting Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449 (8th Cir. 1979)).

It is abundantly clear that the two suits do not allege the same wrongful acts. In the Prior Federal Action, plaintiff's claims were based on factual allegations of conduct directed against him and his wife during her visits to the prison. These events were alleged to have taken place between January 2008 and May 2008. In the present suit, plaintiff claims are based on several alleged incidents that took place beginning in June 2009. Plaintiff alleges that he was stripped searched, harassed, and belittled because he had filed grievances or lawsuits against the staff at PCC. Plaintiff also alleges that he was placed in administrative segregation because he had filed grievances and lawsuits against staff at PCC. While in administrative segregation, plaintiff alleges that he was routinely denied a noon meal, and that he was issued false conduct violations as punishment for filing lawsuits and grievances. In no way are the claims in the present suit the same as the claims in the Prior Federal Action, and defendants' argument borders on frivolous.

In support of their contention that they are entitled to dismissal based on res judicata, defendants make the nonsensical argument that because plaintiff offered testimony during his deposition in the Prior Federal Lawsuit regarding the conduct about which he now complains, he is precluded from bringing claims based on that conduct in this suit. Defendants provide no legal

authority for their notion that disclosure of alleged conduct in one suit precludes a party from bringing claims based on that conduct in a subsequent suit, and the Court has found none. Plaintiff did not amend the complaint in his Prior Federal Lawsuit to add the conduct, nor was he required to do so – the conduct involved different defendants, separate alleged wrongdoings, and occurred in a later time frame. The fact that plaintiff prosecuted the Prior Federal Lawsuit – a different cause of action against different defendants – does not preclude plaintiff from bringing the claims in his current suit. Defendants' arguments regarding res judicata are without merit.

### B. Defendant Christy Pashia

Defendant Christy Pashia moves for summary judgment as to the Fourth Amendment claims against her. She argues that the strip search of plaintiff was reasonable, and that she is entitled to qualified immunity.

#### 1. Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. Bell v. Wolfhish, 441 U.S. 520, 558 (1979). To prevail on his claim that he was subjected to a strip search that violated his Fourth Amendment rights, plaintiff must show that the search was unreasonable in the prison context. Id. In determining whether a search was reasonable, the Supreme Court has instructed that the lower courts are to balance "the need for the particular search against the invasion of personal rights that the search entails." Id. at 559. Courts are to consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. Strip searches are extremely intrusive, but under certain circumstances they have been upheld by the Supreme Court and the Eighth Circuit Court of Appeals. Bell, 441 U.S. at 559-60 (upholding prison strip search policy that required all inmates to submit to a visual

body cavity search after every contact visit); <u>Goff v. Nix</u>, 803 F.2d 358 (8th Cir. 1986) (upholding strip search of all inmates before being moved outside their living unit).

In his Complaint and his response to defendants' motion for summary judgment, plaintiff does not claim that there was no justification for the strip search, but rather, he objects to the manner in which it was conducted and where it was conducted. More specifically, plaintiff claims that it was unlawful for Christy Pashia, a female guard, to have conducted the strip search, and he objects to the fact that the strip search was conducted in a shower with glass or mesh doors where he could have been seen by anyone in the area.

Citing to <u>Timm v. Gunter</u>, 917 F.2d 1093, 1101 (8th Cir. 1990), defendant Pashia argues the search was reasonable, and there was no Fourth Amendment violation. According to Pashia, "opposite-sex surveillance of male inmates, performed on the same basis as same-sex surveillance, is not 'unreasonable.'" Doc. 83 at 10. She argues that whatever minimal intrusions on plaintiff's privacy were "outweighed by institutional concerns for safety and equal employment opportunities." <u>Timm</u>, 917 F.2d at 1101. The <u>Timm</u> case, however, is not controlling as to strip searches. In <u>Timm</u>, the Eighth Circuit addressed whether female guards working in an all-male prison could perform pat searches and general surveillance in the showers and bathrooms. <u>Id.</u> at 1096. Strip searches were not at issue. The Court of Appeals upheld the policies, but specially noted that with regard to pat searches, the guards did not search the inmates' genital and anal areas; and with regard to the surveillance, "there [were] alternative means available for inmates to retain their privacy," such as using a towel as cover or not sleeping in the nude. <u>Id.</u> at 1100-2. The same cannot be said for strip searches.[9]

---

[9]To the extent plaintiff is basing his Fourth Amendment claim against defendant Pashia on her general surveillance of the showers, bathroom, and his cell, plaintiff's claim would be without

In her memoranda in support of summary judgment defendant Pashia fails to cite to the two cases in which the Eighth Circuit has expressed its view of strip searches conducted by guards of the opposite sex. In <u>Schmidt v. City of Bella Villa</u>, 557 F.3d 564 (8th Cir. 2009), a male officer unbuttoned and folded in the top portion of a female detainee's jeans in order to photograph an identifying tattoo. The Eighth Circuit rejected the Fourth Amendment claim of the female detainee finding that, "a female officer would be required only if [the plaintiff] were subjected to a strip search for Fourth Amendment purposes. . . [The plaintiff] was not subjected to the uniquely intrusive requirement that she disrobe completely." <u>Id.</u> at 573. And in <u>Richmond v. City of Brooklyn Center</u>, 490 F.3d 1002 (8th Cir. 2007), the Court of Appeals wrote: "The law [is] also clear that strip searches should be conducted by officials of the same sex as the individuals being searched." <u>Id.</u> at 1008 (citing <u>Roberts v. Rhode Island</u>, 239 F.3d 107, 113 (1st Cir. 2001)).[10]

Here, it is undisputed that Christy Pashia was the "second officer" for the strip search, but just what being a "second officer" entailed is in dispute. Defendant Pashia offered testimony that in general she does not look at an inmate when he is being strip searched, but she did not testify as to what she specifically did with regard to plaintiff. Plaintiff, on the other hand, stated that defendant Pashia did look at him when he was nude and being searched. There is little else in the record about the circumstances of the strip search or why it was being conducted. Notably, there

---

merit. Opposite-sex surveillance – that is surveillance of male inmates by female guards – is allowed under Eighth Circuit law. <u>Timm</u>, 917 F.2d at 1101 (holding no Fourth Amendment violation based on intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in their cells).

[10]Furthermore, in <u>Hill v. McKinley</u>, 311 F.3d 899 (8th Cir. 2002), the Eighth Circuit found a Fourth Amendment violation when a nude detainee was completely exposed to officers of the opposite sex for a substantial period of time. In <u>Hill</u> the Court of Appeals found there was a Fourth Amendment violation, but granted the officrs qualified immunity because the plaintiff's right was not clearly established at the time. <u>Id.</u> at 904.

is no evidence in the record as to whether there were there exigent circumstances that required Christy Pashia to be "second officer" during the strip search, as opposed to an officer of the same gender as plaintiff. As for where the strip search was took place, it is undisputed that the search was conducted in an enclosed glass or mess shower stall that was visible to others passing by, but there is little to nothing in the record as to who would have access to that area, what exactly one can see from the outside of the shower stall, and whether there were other locations available in which to conduct the search. In short, the Court finds there remain disputes of fact as to whether defendant Pashia conducted a strip search of plaintiff under circumstances that were unreasonable. Defendant Pashia is not entitled to summary judgment as to plaintiff's Fourth Amendment claim.

### 2. Qualified Immunity

Finally, defendant Christy Pashia argues that she is entitled to qualified immunity. Defendants may be entitled to qualified immunity for those claims brought against them in their individual capacities. McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong first. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

For purposes of summary judgment, defendant Pashia is not entitled to qualified immunity. Based on Eighth Circuit precedent, it was clearly established at the time that absent exigent

circumstances a prison official may violate a prisoner's constitutional rights by subjecting him to a search by a member of the opposite sex. Schmidt, 557 F.3d at 568 (for purposes of the Fourth Amendment, officers of same sex are "required" to conduct strip searches); Richmond,490 F.3d at 1008 ("[t]he law [is] also clear that strip searches should be conducted by officials of the same sex as the individuals being searched.") (citing Roberts, 239 F.3d at 113)).

As for the first prong, whether defendant Pashia violated plaintiff's constitutional rights, viewing the facts in a light most favorable to plaintiff, the Court finds there is evidence to demonstrate Pashia violated plaintiff's rights under the Fourth Amendment. There is evidence to show that Pashia, a female officer, conducted an unreasonable strip search of plaintiff, a male inmate, and there were no circumstances to justify the search. Thus, there remain issues of disputed facts that preclude the Court from finding Pashia is entitled to qualified immunity. Pashia's motion for summary judgment based on qualified immunity should therefore be denied.

## V. Conclusion

In sum, the Court finds plaintiff's claims are not barred by the doctrine of res judicata. The remaining defendants were dismissed without prejudice for failure to serve in the State Court Action, and any state court ruling on issues that were actually litigated are moot or not applicable at this time. Plaintiff's Prior Federal Action has no preclusive effect because it was against different defendants and involved different alleged wrongdoings that took place at a different time. In addition, the Court finds there remain issues of material fact as to whether defendant Pashia conducted an unreasonable search in violation of the Fourth Amendment. The Court further finds, for purposes of summary judgment, that defendant Pashia has not shown that she is entitled to qualified immunity. The Court will appoint plaintiff trial counsel and set this case for trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Daniel Blair, Shannon R. Clubbs, Phillip G. Comer, Charles T. Conrad, Clifton J. Copeland, Kevin Culton, Willie Forbes, Jason L. Horn, Christy Pashia, and Jeremy J. Huffman's motion for summary judgment is **DENIED.** (Doc. 82)

**IT IS FURTHER ORDERED** that plaintiff Ernest Cornelius Williams's motion to compel is **DENIED without prejudice.** (Doc. 68)

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ___16th___ day of August, 2016.