# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

ERNEST CORNELIUS WILLIAMS, )
                       Plaintiff, )
                                   ) No. 4:13-CV-2440 CAS
      v. )
DON ROPER, et al., )
                       Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Christy Pashia, a/k/a Christy Huffman's motion for new trial or, in the alternative, to amend the judgment. Plaintiff opposes the motion, which is fully briefed and ripe for review. Also before the Court is plaintiff's counsel's motion for compensation of services and reimbursement of out-of-pocket expenses. For the following reasons, the Court will deny defendant's motion for new trial, and grant in part, and deny in part defendant's motion to amend the judgment. The Court will grant in part the motion for compensation of services and expenses.

### *I. Background*

Plaintiff Ernest Cornelius Williams is an offender in the custody of the Missouri Department of Corrections ("MDOC"), and at all times relevant to this suit, plaintiff was an inmate at Potosi Correctional Center ("PCC"). In his Complaint, plaintiff brought a number of claims under 42 U.S.C. § 1983 against Don Roper (Warden); Ian Wallace (Asst. Warden); Kay Kline (Functional Unit Manager); Brian Allen (Acting Functional Unit Manager); Eric Dunn (Caseworker); Christy Pashia[1] (Correctional Officer); Jeremy Huffman[2] (Correctional Officer); Willie Forbes (Correctional

---

[1]Plaintiff named defendant "Christy Huffman (Pashia)" in his complaint. This defendant responded as "Christy Huffman, n/k/a Christy Pashia," and she has referred to herself as Christy Pashia in all of her filings. Plaintiff did not amend his Complaint. For purposes of clarity, the Court shall refer to this defendant as "Pashia."

[3]Plaintiff spells defendant Jeremy Huffman's name "Huffman" or "Hoffman" in various places in his Complaint. For ease of reference, the Court will refer to this defendant as "Huffman."

Officer); Jason Horn (Correctional Officer); Daniel Blair (Correctional Officer); Kevin Culton (Correctional Officer); Shannon Clubbs (Correctional Officer); Clifton Copeland (Correctional Officer); Charles Conrad (Correctional Officer); Philip Comer (Correctional Officer); and Rick Bailey (Correctional Officer), in their individual and official capacities.

Following a review under 28 U.S.C. § 1915(e)(2)(B), the Court dismissed all the claims against defendants Bailey, Dunn, Roper, Wallace, Allen, and Kline. The Court also dismissed claims brought against all defendants in their official capacities. The Court further found that plaintiff had failed to allege claims under the Eighth Amendment, for conspiracy, and for violations of plaintiff's due process rights.

The Court did find that plaintiff had alleged enough facts in his Complaint to state a claim for relief for First Amendment retaliation against defendants Blair, Horn, Conrad, Clubbs, Comer, Copeland, Forbes, Culton, and Huffman in their individual capacities. In his Complaint plaintiff alleged that he was placed in administrative segregation because he had filed grievances and lawsuits against staff at PCC. While in administrative segregation, plaintiff alleged, among other things, that he was routinely denied a noon meal, forced to sleep on a concrete slab without a mattress or pillow, confined to a cell without heat or proper clothing, and issued false conduct violations as punishment for filing lawsuits and grievances.

The Court further found that plaintiff had stated claims against defendants Culton and Pashia in their individual capacities for violations of the Fourth Amendment based on his allegations regarding strip searches. Plaintiff alleged that defendant Pashia, a female officer, conducted a strip search and observed him while he was nude. Plaintiff also alleged that defendant Culton engaged in an unlawful strip search of plaintiff in his cell.

Following discovery, defendants Pashia, Huffman, Forbes, Horn, Blair, Culton, Clubbs, Copeland, Conrad, and Comer moved for summary judgment. The Court denied defendants' motion and set this case for trial. The Court also appointed counsel for plaintiff.

2

After a four-day trial against the ten remaining defendants, the jury returned a defense verdict as to nine of the defendants. The jury found in plaintiff's favor against defendant Pashia with regard to his claim of a Fourth Amendment violation based on an unreasonable strip search. The jury awarded plaintiff $500.00 in compensatory damages, and $1,000.00 in punitive damages.

Defendant Pashia now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A). Pashia asserts that she is entitled to a new trial because: (1) she should have been permitted to introduce evidence regarding plaintiff's prior convictions; (2) the Court erred in submitting an adverse inference instruction regarding the maintenance of shift logs; (3) the jury instructions were incorrect regarding what plaintiff needed to prove to establish a claim under the Fourth Amendment; (4) she is entitled to judgment as a matter of law because she did not commit any constitutional violation; (5) she is entitled to qualified immunity; and (6) the doctrine of res judicata applies. In the alternative, defendant Pashia argues that plaintiff is not entitled to compensatory damages because he suffered no physical injuries, and he is not entitled to punitive damages under the law. Plaintiff opposes defendant's motion for new trial or, in the alternative, to amend the judgment.

## II. Discussion

### A. Defendant's Motion for New Trial

#### 1. *Evidence regarding prior convictions*

Defendant Pashia moves for a new trial based on an evidentiary ruling. Pashia contends that she should have been able to question plaintiff about his prior convictions and the length of his sentence, which she argues were relevant as to his credibility.

In a pretrial motion in limine, plaintiff moved to exclude reference to his convictions, other than the fact that he is incarcerated due to a felony conviction. Felony convictions are admissible in a civil case for the "purposes of attacking the character for truthfulness of the witness." Fed. R. Evid. 609. In his motion in limine, plaintiff argued that the jury would know he was a convicted felon, but they need not know the specifics of his conviction and the length of his sentence. He

3

argued that information regarding the nature of his conviction, which was for murder, and the length of his sentence were irrelevant to the facts at issue in this case, and should be excluded as unduly prejudicial under Federal Rule of Evidence 403. After giving the parties an opportunity to be heard at a hearing, the Court granted plaintiff's motion, and the jury was instructed that plaintiff was a convicted felon currently in the custody of the MDOC. Foulk v. Charrier, 262 F.3d 687, 700 (8th Cir. 2001) (the district court did not abuse its discretion in excluding evidence, pursuant to Fed. R. Evid. 403, regarding the nature of plaintiff's prior felonies).

It is almost entirely within the discretion of the trial court whether to grant a new trial. See Federal Rule of Civil Procedure 59(a); Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). The key question is whether a new trial is required to avoid a miscarriage of justice. Belk, 228 F.3d at 878.

For the Court to order a new trial, the requesting party must have suffered prejudice, meaning that the result at trial would have been different, if not for the district court's error. See First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D., 679 F.3d 763, 769 (8th Cir. 2012) (courts should only grant a new trial or set aside a verdict "where the error prejudicially influences the outcome.") (quotations omitted); see also Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 833 (8th Cir. 2005). "Where the motion is based on the exclusion of evidence, '[we] will reverse only if the district court's ruling was based on an erroneous view of the law or a clearly erroneous assessment of the evidence and affirmance would result in fundamental unfairness.'" Amplatz v. Country Mut. Ins. Co., 823 F.3d 1167, 1172 (8th Cir. 2016) (quoting Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008)).

In the motion presently before the Court, defendant argues that she should have been allowed to question plaintiff about the nature of his convictions, but adds nothing new to the arguments she made in opposing plaintiff's motion in limine. There is nothing to suggest that the outcome of the

4

trial would have been different had the jury known more about the nature of plaintiff's conviction or the length of his sentence. The Court declines to grant a new trial on this basis, because there was no error in law, and defendant Pashia has not shown that she suffered prejudice on account of the evidentiary ruling.

## 2. *Adverse inference instruction*

Plaintiff also moves for a new trial based on the submission of an adverse inference. During the pretrial proceedings, plaintiff filed a motion asking that the Court grant plaintiff an adverse inference against defendants for spoiling evidence. The Court granted the motion in part, and an adverse inference was submitted to the jury.

Plaintiff plainly alleged in his pro se complaint, which was filed on December 2, 2013, that on September 22, 2009 he was stripped search by defendants Culton and Pashia, even though there were numerous male guards on duty that day. Doc. 1 at 15-16. (defendant Pashia participated in the strip search of plaintiff, "[e]ven though numerous male guards were on duty with the same or high rank and better skilled were readily available to witness plaintiff being strip searched."). On July 1, 2014, the Court conducted a frivolity review pursuant to 28 U.S.C. § 1915(e) and found that plaintiff's allegations of unlawful strip searches by defendants Culton and Pashia in violation of the Fourth Amendment stated a claim upon which relief may be granted. Waivers of service were issued, and defendants were sent copies of the complaint on July 2, 2014. Defendants were on notice from the time they received the Complaint that the staff who were on duty on September 22, 2009, would be an issue in this case. Defense counsel should have known that the staffing logs would be material. What is more, in a number of interrogatories and document requests, plaintiff asked for copies of staffing logs and records relating to who was on duty the day he was strip searched by defendant Pashia.

It was undisputed that staffing logs once existed. At the time of trial, defendants maintained that they were no longer available and were probably destroyed at some point in time pursuant to a MDOC retention policy. At the pretrial conference, defense counsel was unable to say when the

5

staffing logs were destroyed. Defendants did state in their memorandum in opposition to plaintiff's motion for an adverse inference that MDOC keeps shift logs for approximately five years. Plaintiff argued at the pretrial conference that the destruction of the staffing logs, which he contended was key evidence in the case, severely prejudiced his ability to prepare for trial and present his case.

According to the Eighth Circuit, the district court has broad discretion in deciding whether to impose sanctions upon a finding that evidence has been destroyed. See Bass v. General Motors, 150 F.3d 842, 851 (8th Cir. 1998). Sanctions for the destruction of evidence are appropriate only upon a showing that the destruction prejudiced the opposing party. See Dillon v. Nissan Motor Co. Inc., 986 F.2d 263, 267 (8th Cir. 1993).

In this case, the Court found that the defendants were on notice from the time they received the Complaint that the staffing records would be material, and failed to maintain those records. The Court further found that plaintiff was prejudiced by the destruction of the staffing logs. The Court, however, rejected plaintiff's proposed adverse inference instructions, which went too far, and denied his request that default judgment be entered against defendants Pashia and Culton as to his Fourth Amendment claim. Instead, the following adverse inference instruction was given to the jury:

> The staffing logs for September 22, 2009 were destroyed by the prison and should have been preserved. You may, but are not required to, assume that the contents of the staffing logs would have shown there were other male guards available to assist in conducting the strip search of Plaintiff that day.

Doc. 184 at 8.

In her motion for new trial, defendant Pashia argues that the Court should not have given this instruction because there was no evidence of bad faith or intentional destruction of evidence. Defendant's argument is without merit. A finding of bad faith is not required for the imposition of sanctions when documents are destroyed after litigation has commenced. "Sanctioning the ongoing destruction of records during litigation and discovery by imposing an adverse inference instruction is supported by either the court's inherent power or Rule 37 of the Federal Rules of Civil Procedure, even absent an explicit bad faith finding, and we conclude that the giving of an adverse inference instruction in these circumstances is not an abuse of discretion." Stevenson v. Union Pacific RR,

354 F.3d 739, 747 (8th Cir. 2003). This is true even if the party destroyed such evidence pursuant to a reasonable document retention policy, if the party knew or should have known that the documents would become material. Stevenson, 354 F.3d at 747-48. Pashia's counsel should have known at the time counsel received the Complaint that staffing logs for September 22, 2009, would be material in this case, and yet she failed to preserve the logs.

Even if it was not proper for the Court to give the adverse instruction, defendant Pashia is not entitled to a new trial because she has not shown how the outcome of the trial would have been different if the adverse inference instruction had not been given. The instruction did not tell the jury that it must conclude other male guards were available to assist in conducting the strip search. It only instructed the jury that it *could* assume the logs would have shown that other male guards were available. And what is more, defendant Pashia did not dispute that there were other male guards who were available to conduct the strip search. Defendant has not met her burden to show that she is entitled to a new trial based on the giving of the adverse inference instruction. In sum, there has been no miscarriage of justice resulting from the adverse inference instruction, and defendant is not entitled to a new trial on this basis. See Belk, 228 F.3d at 878.

### 3. *Jury instruction regarding Fourth Amendment unreasonable search*

Defendant Pashia also argues that she is entitled to a new trial because the jury instruction regarding what constitutes a Fourth Amendment unreasonable strip search was erroneous. In attacking the wording of the jury instruction, Pashia cites to Timm v. Gunter, 917 F.2d 1093, 1101 (8th Cir. 1990), and other Eighth Circuit case law, and makes the same arguments she made on summary judgment – that inmates are entitled to a far lower expectation of privacy than other citizens, and the Eighth Circuit allows for opposite-sex surveillance of inmates, including strip searches.

Contrary to defendant's representations, the Eighth Circuit has never sanctioned opposite sex strip searches, which include the search of genital and anal areas. The Timm case, upon which Pashia primarily relies, examined whether female guards working in an all-male prison could

7

perform pat searches and general surveillance of inmates in showers and bathrooms. Id. at 1096. The case, however, explicitly excluded strip searches, as the policy at issue did not allow female guards to conduct strip searches of male inmates. 917 F.2d at 1100. The Eighth Circuit upheld the prison's policies, but specially noted that with regard to pat searches, the female guards did not search the male inmates' genital and anal areas. And in upholding the policy regarding surveillance, the appellate court found it was significant that inmates had some means of preserving personal privacy. The Eighth Circuit specifically noted that "there [were] alternative means available for inmates to retain their privacy," such as using a towel as cover or not sleeping in the nude. Id. at 1100-02. The same cannot be said for strip searches. The Timm case does not support the jury instruction Pashia submitted: "[O]pposite-sex surveillance of male inmates, performed on the same basis as same-sex surveillance, is not unreasonable." This is not the holding in Timm.

Defendant Pashia also cites to Hill v. McKinley, 311 F.3d 899 (8th Cir. 2002), in support of her proposed jury instruction. The Eighth Circuit in Hill found that it was not a violation of a female detainee's Fourth Amendment rights when she was told to disrobe and was transferred from one room to another, naked in front of male guards. Id. at 903. In this case, however, the plaintiff was unruly and violent, and there were not enough female guards available and, therefore, both female and male guards participated in the transfer. Id. Under these circumstances, the Eighth Circuit found there was no Fourth Amendment violation. Id. The Hill case does not support defendant Pashia's proposed instruction, but rather the case supports the jury instruction that was given in this case.

Furthermore, the Eighth Circuit in Hill did find there was a Fourth Amendment violation when the plaintiff was restrained and completely exposed to officers of the opposite sex for a substantial period of time, and she did not have the means to cover herself.[3] Id. at 904. The Court wrote: "The interests of safety and security asserted by the defendants are sufficient to support the

---

[3]In Hill the Eighth Circuit found there was a Fourth Amendment violation but granted the officers qualified immunity because the plaintiff's right was not clearly established at the time. 311 F.3d at 904.

8

prompt restraining of a violent prisoner, even when she is naked and some male guards must be used to perform the procedure. Those same interests do not justify the continued exposure of a prisoner's genitals once she has been restrained and no longer poses any threat to herself or others." Id. Again, this language tracks the jury instruction that was given in this case, not the one defendant Pashia proposed.[4]

The Eighth Circuit has spoken as to the reasonableness of opposite-sex strip searches – law the defendants largely ignored. In Schmidt v. City of Bella Villa, 557 F.3d 564 (8th Cir. 2009), the Eighth Circuit rejected the Fourth Amendment claim of the female detainee finding that, "a female officer would be required only if [the plaintiff] were subjected to a strip search for Fourth Amendment purposes. The plaintiff "was not subjected to the uniquely intrusive requirement that she disrobe completely." Id. at 573. In Richmond v. City of Brooklyn Center, 490 F.3d 1002 (8th Cir. 2007), the Eighth Circuit stated: "The law [is] also clear that strip searches should be conducted by officials of the same sex as the individuals being searched." Id. at 1008 (citing Roberts v. Rhode Island, 239 F.3d 107, 113 (1st Cir. 2001)).

Defendant's proposed language – that "opposite-sex surveillance of male inmates, performed on the same basis as same-sex surveillance, is not unreasonable" – is simply not supported by the case law. While inmates have a lowered expectation of privacy, under Eighth Circuit law they need to be able to retain some level privacy in front of guards of the opposite sex, especially when the search necessarily involves exposing one's genital and anal areas, and there are no exigent circumstances. Defendant is not entitled to a new trial on these grounds.

### 4. *Qualified immunity*

In her motion for new trial defendant Pashia again makes the argument that she is entitled to qualified immunity. This Court already determined in denying defendants' motion for summary

---

[4]Plaintiff also cites to Franklin v. Lockhart, 883 F.2d 654, 655 (8th Cir. 1989), in support of her motion for new trial. Franklin, however, does not address strip searches by a member of the opposite sex, but rather it held that twice daily strip searches of prisoners in administrative segregation, where a prisoner had been recently stabbed by a homemade knife, did not violate the Fourth Amendment. Id.

9

judgment that defendant Pashia is not entitled to qualified immunity. Nothing occurred at trial to change that ruling.

"Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong first. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Based on Eighth Circuit precedent, it was clearly established at the time that routine strip searches should not be conducted by members of the opposite sex. Schmidt, 557 F.3d at 568 (for purposes of the Fourth Amendment, officers of same sex are "required" to conduct strip searches); Richmond, 490 F.3d at 1008 ("[t]he law [is] also clear that strip searches should be conducted by officials of the same sex as the individuals being searched.").

There was evidence at trial that Pashia did violate plaintiff's Fourth Amendment constitutional rights. Defendant Pashia, a female guard, participated in a strip search of plaintiff, a male inmate, and the search was conducted by Pashia even though there was evidence that plaintiff was cooperative, and other male guards were available. Pashia argues in her motion that she testified she was there as the "second officer," and her job was not to watch the prisoner. But there was also testimony at trial that defendant Pashia was in close proximity to plainitff and she did in fact watch plaintiff in the nude and viewed his genital and anal regions.

Defendant Pashia also argues that the search was reasonable, in part, because plaintiff requested that it be done by a supervisor, and she was the sergeant on duty at the time. But at trial, plaintiff testified that he voiced objection to defendant Pashia, a female, conducting the search.

10

There was also testimony that plaintiff's objections were ignored, and jokes were made of his protests. Under the facts of this case, the Court finds defendant Pashia is not entitled to qualified immunity.

### 5. *Res Judicata*

Finally, in her motion for new trial defendant Pashia renews her arguments that plaintiff's claims are barred by the doctrine of res judicata. The Court rejects defendant's res judicata arguments for the same reasons it rejected the arguments in denying defendants' motion for summary judgment. See Doc. 96 at 9-16.

With regard to Ernest C. Williams v. Don Roper, et al., Case No. 09WA-CC00532 (the "State Court Action"), this petition for writ of habeas corpus filed in Washington County, Missouri, was dismissed without prejudice. Under Missouri law, dismissal without prejudice "usually is not an adjudication on the merits of the claim and does not affect the plaintiff's right to refile the action." Sexton v. Jenkins & Associates, Inc., 152 S.W.3d 270, 273 (Mo. 2004) (citing Mo. Sup. Ct. Rule 67.01; Mahoney v. Doerhoff Surgical Srvs., 807 S.W.2d 503, 506 (Mo. banc 1991)). That said, "even when a court has dismissed a case without prejudice, an issue specifically and necessarily decided by that court is final and may not be relitigated in a second action brought in a court of concurrent jurisdiction." Bachman v. Bachman, 997 S.W.2d 23, 25 (Mo. Ct. App. 1999). But as addressed in detail the Court's Memorandum and Order dated August 16, 2016, none of the issues decided by the state court are applicable to this action in its present posture. Notably, defendant Roper, who filed a motion to dismiss in the State Court Action, is no longer a party to this suit. In her motion for new trial, defendant Pashia does not explain how issues decided by the court in the State Court Action preclude judgment against her in this case. For the reasons stated in the Memorandum and Order dated August 16, 2016, the Court finds the doctrine of res judicata based on the prior State Court Action does not apply.

Defendant Pashia also argues, once again, that Williams, et al. v. Silvey, et al., Cause No. 4:09-CV-211 NCC (E.D. Mo.) (the "Prior Federal Action") precludes plaintiff from bringing claims

11

against her under the doctrine of res judicata. As the Court explained in the Memorandum and Order dated August 16, 2016, this argument is without merit.

Under Eighth Circuit law, a claim will be held to be precluded by a prior lawsuit when:

(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009) (citing Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998)); see also In re Anderberg–Lund Printing Co., 109 F.3d 1343, 1346 (8th Cir. 1997). The Court has carefully reviewed the record in the Prior Federal Action and finds the third and fourth elements have not been met.

The parties in this suit are not the same as the parties in the Prior Federal Action. Defendant Pashia was not a defendant in the Prior Federal Action. Furthermore, in the present suit she was sued in her individual capacity, and there is no privity between her and the defendants in the Prior Federal Action. The Eighth Circuit has held that prior litigation against one state official in his official capacity neither protects that official from being sued in his individual capacity, nor does it protect other officials from the same agency from being sued in their individual capacities. Irving v. Dormire, 586 F.3d 645, 647 (8th Cir. 2009) (quoting Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987) ("litigation involving officials in their official capacity does not preclude relitigation in their personal capacity.")).

Finally, the two suits do not allege the same wrongful acts. In the Prior Federal Action, plaintiff's claims were based on factual allegations of conduct directed against him and his wife during her visits to the prison. These events were alleged to have taken place between January 2008 and May 2008. In the present suit, plaintiff's claims are based on several alleged incidents that took place beginning in June 2009. As the Court has stated before, the claims in the present suit are not the same as the claims in the Prior Federal Action.

For the reasons stated in the Memorandum and Order dated August 16, 2016, the Court finds defendant Pashia's motion for new trial based on the argument that the Prior Federal Action has res judicata effect in this case is without merit.

### B. Defendant's Motion to Amend the Judgment

#### 1. *Compensatory damages*

In the alternative, defendant moves to amend the judgment to decrease the amount of damages to $1.00. Following deliberations, the jury returned a verdict of $500.00 in compensatory damanges and $1,000.00 in punitive damages.

Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") states as follows:

> Limitations on recovery - no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

42 U.S.C. § 1997e(e). The statute applies to "all federal actions brought by prisoners." Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004) (prohibiting prisoner plaintiff from recovering compensatory damages, because those claims contained no allegations of physical injury). The statute limits remedies for claims not involving injury to nominal damages and, where applicable, punitive damages, injunctive and declaratory relief. Id.; see also Sisney v. Reisch, 674 F.3d 839, 843 (8th Cir. 2012) (finding district court did not err in barring prisoner from recovering compensatory damages because no claim of physical injury).

At trial, there was no evidence that plaintiff suffered physical injuries as a result of the strip search conducted by defendant Pashia. Plaintiff testified that as a result of defendants' mistreatment and harrasment, he suffered from humiliation, mental anguish and suffering, nightmares, and headaches. In opposing defendant's motion to amend the judgment, plaintiff argues that "[a] headache is clearly a physical injury and the jurors were free to believe Mr. Williams's testimony regarding his physical condition and ailments." Doc. 190 at 14. Headaches caused by stress, however, are not a physical injury within the meaning of the PLRA. See Cooksey v. Hennessey,

13

2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") (internal quotation marks and citations omitted); Johnson v. Georgia, 2007 WL 2684985, at *3 (M.D. Ga. Sept. 7, 2007) ("stress and a mental disorder" not "physical injury" for purposes of PLRA); Brown v. Porter, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); Todd v. Graves, 217 F.Supp.2d 958, 960 (S.D. Ia. 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); Cannon v. Burkybile, 2000 WL 1409852, at *6 (N.D. Ill. Sept. 21, 2000) (headaches, insomnia, stress, and stomach anxiety are *de minimis* symptoms that do not constitute a physical injury sufficient to overcome the PLRA's bar); Cain v. Commonwealth of Virginia, 982 F. Supp. 1132, 1135 n.3 (E.D. Va. 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); Pinkston–Bey v. DeTella, 1997 WL 158343, at *3 (N.D. Ill. Mar. 31, 1997) (severe headaches and emotional distress not "physical injury" for purposes of PLRA).

That being said, even if the Court were to find that headaches caused by stress are physical injuries within the meaning of the PLRA, there was no evidence that plaintiff's headaches were caused by the one strip search in which defendant Pashia participated. Plaintiff had a number of claims against ten defendants, most of which arose from his confinement in administrative segregation. And plaintiff did not submit evidence of causation. There was no testimony linking the one strip search by defendant Pashia to plaintiff's headaches.

Plaintiff also contends that defendant's argument regarding compensatory damages is waived because she failed to argue that plaintiff was not entitled to compensatory damages earlier in the proceedings. Defendant has not waived the argument because prior to trial it was unclear what injuries plaintiff would testify were the result of the allegedly unconstitutional conduct. It was unclear prior to trial whether the strip searches at issue involved physical contact. Furthermore, this

case did not arise just from the unlawful strip search, plaintiff also made numerous claims against other staff at PCC about his treatment in administrative segregation. There were allegations that he had a rash, and that he suffered from back pain as a result of the condition of administrative segregation, which might have supported a compensatory damage award had plaintiff prevailed on those claims.

Finding there were no physical injuries as a result of defendant Pashia's unlawful conduct, the Court will follow the case of Corpus v. Bennett, 430 F.3d 912 (8th Cir. 2005). In Corpus, a jury awarded a plaintiff $75,000.00 in damages in a § 1983 action. The jury specially found that the officer had violated the plaintiff's constitutional rights, but he was not the direct cause of the plaintiff's injuries. Id. at 915. Stating that "nominal damages are the appropriate means 'to vindicate constitutional rights whose deprivation has not caused an actual, provable injury,'" the Eighth Circuit affirmed the district court's reduction in the amount of damages from $75,000.00 to $1.00. Id. at 916 (quoting Westcott v. Crinklaw, 133 F.3d 658, 662 (8th Cir. 1998)). In so doing, the Eighth Circuit noted that the district court had a "duty" to make the damages award conform with the law, and that "one dollar is recognized as an appropriate value for nominal damages." Id. (citing Risdal v. Halford, 209 F.3d 1071, 1073 (8th Cir. 2000)).

In this case, the jury awarded plaintiff $500.00 in compensatory damages, but plaintiff did not suffer physical injuries as a result of defendant Pashia's conduct. The Court will, therefore, amend the judgment and award plaintiff $1.00 in nominal damages in lieu of the $500.00 in compensatory damages the jury awarded. Id.; see also Williams v. Hobbs, 662 F.3d 994, 1010 (8th Cir. 2012) (nominal damages in the amount of $1.00 "are the appropriate means to vindicate constitutional rights whose deprivation has not cause an actual provable injury.").

### 2. *Punitive Damages*

Finally, defendant Pashia argues that plaintiff is not entitled to punitive damages. Punitive damages are allowed under the PLRA. Royal, 375 F.3d at 723 ("Congress did not intend section 1997e(e) to bar recovery for all forms of relief"). "In determining whether to award punitive

15

damages in a § 1983 case, the factfinder must, as a threshold matter, find that a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Williams, 662 F.3d at 1011 (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). "If the factfinder makes this threshold finding, it then must consider whether to award punitive damages in light of punitive damages' twin aims: to '(1) punish willful or malicious conduct; and (2) deter future unlawful conduct.'" Id.

In this case the Court determined that there was sufficient evidence that defendant's conduct involved reckless or callous indifference to plaintiff's constitutional rights, and the issue was submitted to the jury using the Eighth Circuit's model instruction for punitive damages in a civil rights case. See 8th Cir. Jury Instr. § 4.72 (2013). The jury returned a verdict of $1000.00 in punitive damages against defendant Pashia.

In opposing the award of punitive damages, Pashia argues that there was no constitutional violation and, therefore, "there was not enough evidence to award punitive damages." Doc. 188 at 11. But as addressed above, there was evidence of a Fourth Amendment violation of plaintiff's right to be free from unreasonable searches, including being subjected to a strip search by a female officer. There was evidence that Pashia, a female officer, participated in a routine strip search of plaintiff, a male inmate. There was evidence that she was in close proximity to plaintiff and watched him while he was disrobed, and his genital and anal areas were exposed. Furthermore, there was testimony that plaintiff protested the search by Pashia, and his objections were ignored and he was mocked. And there was evidence that plaintiff was subjected to the search by Pashia even though there were other male guards readily available to conduct the search. The Court finds there was sufficient evidence at trial to support a finding that defendant's conduct involved reckless or callous indifference to plaintiff's constitutional rights.

The Court also finds that the relatively modest amount the jury awarded, $1,000.00, meets the objective of punitive damages in that it punishes the willful or malicious conduct, and will deter

defendant from conducting unlawful strip searches of male inmates in the future. Defendant Pashia's motion to amend the verdict is denied.

      **C.     Plaintiff's Counsel's Motion for Attorney's Fees and Costs**

Also before the Court is plaintiff's appointed counsel Daniel R. Garner's unopposed motion for compensation of attorney's fees and expenses incurred in representing plaintiff. Counsel seeks reimbursement from the Attorney Admission Fee Non-Appropriated Fund for attorney's fees in the total amount of $2,500.00 in fees and $1,805.18 in expenses. Counsel's request is accompanied by documentation, including a billing log reflecting work performed and time expended.

All applications for disbursement of funds from the Attorney Admission Fee Non-Appropriated Fund are governed by Local Rules 12.03 and 12.06, the Administrative Order of May 5, 2010, concerning the Attorney Admission Fee Non-Appropriated Fund, and the Regulations Governing the Disbursement of Funds from the Non-Appropriated Fund for Attorney's Fees and Out-of-Pocket Expenses Incurred by Attorneys Appointed to Represent Indigent Parties in Civil Proceedings Pursuant to 28 U.S.C. § 1915(e), dated May 5, 2010 (the "Regulations"). The applicable Regulations provide that the maximum reimbursement for attorney's fees in any one case is two thousand five hundred dollars. See Regulations, §§ B.2, D.

The Court has reviewed the submitted billing log and determines that the time claimed for attorney's fees expended was appropriate and reasonable. The Court will order compensation for attorney's fees in the amount of $2,500.00.

Mr. Garner also seeks reimbursement in the amount of $1805.18 for itemized expenses. Some of these expenses were not sufficiently documented, and will not be allowed.

Of the itemized expenses, Mr. Garner is seeking $500.00 for Westlaw research. Under the Regulations, "Expenses related to computer-assisted legal research must be accompanied by receipts that show the method of billing and the total time spent using the computerized system. In addition, a statement of the issues researched must also be included." Regulations, § E.6. Mr. Garner, however, does not detail under what method the Westlaw research was billed, how much time was

spent on Westlaw, and what issues were being researched. The Court, therefore, will disallow this expense.

Mr. Garner also seeks $174.23 in travel expenses. Under the Regulations,

> Travel by privately-owned automobile may be claimed at the rate currently prescribed for federal judiciary employees who use a private automobile for conduct of official business, plus parking fees, tolls and similar expenses. Travel other than by privately-owned automobile may be claimed on an actual expense basis and must be approved prior to the travel by the judge to whom the case is assigned.

Regulations, § E.2. Mr. Garner has sufficiently documented $156.68 in travel expenses for travel done in a privately owned car for purposes of litigating this case. Mr. Garner, however, is also claiming $17.55 for Uber rides to the courthouse. This expense was not given prior approval and will be disallowed.

All other costs plaintiff's counsel is requesting were reasonable for the prosecution of this case and adequately documented. Mr. Garner will therefore be reimbursed out-of-pocket costs in the amount of $1,287.63. The total amount to be reimbursed is $3,787.63, comprised of $2,500.00 in attorney's fees and $1,287.63 in out-of-pocket expenses.

### *III. Conclusion*

The Court finds that defendant Pashia is not entitled to a new trial based on the exclusion of evidence regarding plaintiff's convictions, the giving of the adverse inference instruction, and the Fourth Amendment jury instruction. Furthermore, defendant Pashia is not entitled to qualified immunity, and the doctrine of res judicata does not apply. The Court will, however, grant defendant Pashia's motion to reduce the amount of damages. Plaintiff was awarded $500.00 in compensatory damages, which exceeds the amount allowed under the PLRA and Eighth Circuit case law. The Court will award plaintiff $1.00 in nominal damages in lieu of the compensatory damages awarded by the jury. The Court does find plaintiff is entitled to punitive damages based on the evidence presented at trial. As for plaintiff's motion for attorney's fees and costs, the Court will order compensation for attorney's fees in the amount of $2,500.00 and $1,287.63 in out-of-pocket expenses.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Christy Pashia's motion for a new trial or, in the alternative, to amend the judgment is **GRANTED in part and DENIED in part.** Consistent with the terms of this Memorandum and Order, the Court will amend the judgment to award plaintiff $1.00 in nominal damages in lieu of the $500.00 in compensatory damages awarded by the jury. In all other respects, the motion is **DENIED**. [Doc. 187]

**IT IS FURTHER ORDERED** that plaintiff's counsel's motion for compensation of services and reimbursement of out-of-pocket expenses is **GRANTED** in the amount of Three Thousand Seven Hundred Eighty-Seven Dollars and Sixty-Three Cents ($3,787.63). [Doc. 192]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall promptly disburse the sum of Three Thousand Seven Hundred Eighty-Seven Dollars and Sixty-Three Cents ($3,787.63) from the Attorney Admission Fee Non-Appropriated Fund, payable to Greensfelder, Hemker & Gale, P.C. The check shall be mailed to:

> Greensfelder, Hemker & Gale, P.C.
> c/o Daniel R. Garner
> 10 South Broadway, Suite 2000
> Saint Louis, MO 63102

The Court wishes to express its appreciation to appointed counsel for their efforts on behalf of plaintiff in this case.

An amended judgment will accompany this Memorandum and Order.

*[signature]*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  22nd  day of March, 2018.